# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| 3410 OLD CAPITOL TRAIL, LLC, Successor by Merger to HUMES PROPERTIES, LLC, | ) ) ) ) | |
| Plaintiff, | ) | C.A. No. N16C-05-014 FWW |
| v. | ) ) ) | |
| MEGARENTS, INC., t/a Events Unlimited, | ) ) ) | |
| Defendant. | ) ) | |

Submitted: March 20, 2017
Decided: June 23, 2017

## <u>DECISION AFTER TRIAL</u>

Thomas C. Marconi, Esquire, Losco & Marconi, P.A., 1813 North Franklin Street, P.O. Box 1677, Wilmington, Delaware 19899; Attorney for Plaintiff.

Louis J. Rizzo, Jr., Esquire, Reger Rizzo & Darnall LLP, 1523 Concord Pike, Suite 200, Brandywine Plaza East, Wilmington, Delaware 19803; Attorney for Defendant.

**WHARTON, J.**

# I.  INTRODUCTION

Below is the Court's decision following a bench trial on February 13, 2017 and the submission of post-trial memoranda.  For the reasons set forth below, the Court enters judgment in favor of Defendant Megarents, Inc., t/a Events Unlimited and against Plaintiff 3410 Old Capitol Trail, LLC, Successor by Merger to Humes Properties, LLC.

# II.  FACTS AND PROCEDURAL CONTEXT

This dispute centers on the nature of the relationship between the parties upon the expiration of a commercial lease.  Plaintiff 3410 Old Capitol Trail, LLC ("3410") is the successor by merger to the original lessor Humes Properties, LLC.  Under the lease, executed on January 6, 2004, Defendant Megarents, Inc. ("Megarents") leased storage space for a period of one year beginning on April 1, 2004 with a base rent of $12,780.00, payable at the rate of $1,065.00 per month.  By its terms, the lease expired on March 31, 2005.  The parties agree that the lease was not renewed.  Nevertheless, Megarents continued to occupy the leased premises until August 31, 2015 and continued to make payments to 3410.  There were gaps in the payments, however, with 3410 alleging that delinquencies accrued in the period from July 1, 2010 through August 31, 2015.  While most monthly payments made during that period were for $1,065.00, other months the payments ranged from $0.00 to $2,130.00.  Megarents also made three payments of $500.00

2

and one of $130.00 between September 30, 2015 and December 5, 2015 after it had vacated the leased premises.

Eventually, 3410 brought this lawsuit seeking damages of $28,476.10 for unpaid rent, including late payment fees of 25%, interest, attorney's fees, and costs. For various reasons, both legal and factual, Megarents denies that it has any liability to 3410.

A bench trial was held on February 13, 2017. At trial, each side presented a single witness. Humberto Humes ("Humes") represented 3410 and testified in both its case-in-chief and in rebuttal. Philip Eckstrand ("Eckstrand"), founder and president of Megarents, testified for the defense. Exhibits consisted of the lease, 3410's Quickbooks record of lease payments, cancelled checks produced by Megarents, 3410's running balance calculation, and 3410's responses to Megarents request for admissions.

On direct examination, Humes explained that, after the lease expired, the tenancy converted to a month-to-month lease under all of the same terms as the original lease, including a 25% late fee if the monthly rental payment of $1,065.00, due on the first of the month, was not paid within 10 days of the due date. The balance of Humes' direct testimony consisted of explaining how the total amount of $21,328.50 that 3410 now claims it is due was calculated.

On cross-examination, Humes acknowledged that he never sent Megarents any regular monthly invoices, late payment notices, or default notices. He did say that he occasionally hand delivered notices to Eckstrand and a few times gave him statements, but was not sure whether he gave Eckstrand Quickbooks invoices (which did not reflect late fees) or late fee balances. In any event, no copies of statements or notices were introduced into evidence. Humes was asked about the total amounts paid by Megarents for each year from 2012 through 2015 and the total amount of rent due, excluding any late charges for that same time frame. Humes' testimony on this issue was based on records produced at trial which included 3410's Quickbooks record of lease payments, cancelled checks from Megarents to 3410 and its predecessor Humes Properties, LLC, and a running balance calculation prepared by 3410's counsel's office. The running balance document, which includes late fees, shows an amount due as of December 5, 2015 of $21,328.50. The Quickbooks record, which does not include late fees, shows an open balance of $3,337.34 as of April 28, 2016. An open balance of $2,684.01 appears on April 1, 2012, but after that no open balance appears again until March 1, 2014 when an open balance of $1,065.00 appears. Humes was unable to explain the absence of an open balance from April 2012 to March 2014. As invoices are docketed and payments are made, the open balance fluctuates between $0.00 and $1,065.00 until the end of 2014 when the open balance is $0.00. Two invoices are

4

docketed in 2015—one for $1,065.00 on January 1, 2015 and the other for $5,956.48 on August 31, 2015. The open balance on August 31, 2015 is recorded as $5,966.48. The final invoice is recorded as $3,337.34 on April 28, 2016 with an open balance of the same amount on the same date. No payments are recorded as being made after a payment of $1,065.00 on December 22, 2014.

Eckstrand told a different story about the parties' relationship after the lease expired. He said Megarents stayed on as a tenant on a month-to-month basis. He described the space Megarents rented from 3410 as overflow space which Megarents could always vacate if 3410 secured another tenant. He claimed that Megarents was never threatened with termination or eviction and never received any late fee notice. He said that, if a 25% late charge had been applied, Megarents simply would have moved out. When cross-examined, Eckstrand explained that when the national economy took a downturn, his business suffered and it became difficult to make consistent rental payments. He had a discussion with Humes, telling Humes that Megarents would pay rent as best as it could, but if that did not work out, Megarents would vacate the rental unit. In Eckstrand's telling, Humes agreed because "something is better than nothing."

Humes testified again in rebuttal. His testimony consisted of saying that he did not recall having a conversation with Eckstrand in which Eckstrand told him that Megarents would pay as best it could.

After trial, the parties submitted post-trial memoranda. The opening memorandum was filed by 3410 on February 27, 2017. Megarents submitted its memorandum on March 13th and 3410 replied on March 20th.

## III. THE PARTIES' CONTENTIONS

After the one year term of the lease expired on March 31, 2005, 3410 maintains that the lease continued on a month-to-month basis with all of the terms of the lease, including the 25% late charge provision, remaining in effect until August 31, 2015 when Megarents vacated the premises. As the unpaid balance began to accrue, 3410's practice was to credit any payments to the oldest portion of the balance first. Since the amounts paid by Megarents never equalled the monthly rental plus the late fee, Megarents' arrearage continued to grow, beginning with the initial late fee assessment in July 2010. Megarents never became current. The total of unpaid rent plus late fees is $21,328.20. By contrast, the total of unpaid rent without late fees is $4,821.00. According to 3410, it was not required to provide written notice to Megarents of its failure to pay rent on time or give it an opportunity to avoid the late charges because it never declared Megarents in default.

Megarents maintains that the lease executed in 2004 was not in effect after it terminated in 2005, and so, the 25% late fee did not survive the expired lease. Therefore, any damages attributable to the late payment fee cannot be recovered.

6

Instead, the parties operated on a month-to-month basis. Megarents also raises a statute of limitations argument. It points to 3410's answers to Megarents' responses to its request for admissions admitting that Megarents paid all of the rent due in the three years immediately preceding this lawsuit as support for its argument that 3410's claim is barred by the three-year statute of limitations. Alternatively, Megarents argues that, to the extent the original lease is deemed to control the parties' relationship, 3410 failed to comply with its notice and cure provisions and has waived the default provisions for unpaid rent and late charges.

In reply, 3410 argues that Megarents acknowledged that the lease remained in effect in its responses to certain interrogatories and requests for admission and in the pre-trial stipulation. As to Megarents' statute of limitations argument, 3410's position is that no part of the $21,328.50 balance it now seeks is in excess of three years old because payments made by Megarents were applied first to past due amounts owed on the account. Moreover, 3410 argues that Megarents was required to plead the statute of limitation as an affirmative defense and its failure to do so constitutes a waiver of that defense. Finally, 3410 believes that Megarents' waiver argument is itself waived since it was not raised as an affirmative defense, nor was it mentioned in the pre-trial stipulation.

## IV.  STANDARD OF REVIEW

In a bench trial, "the Court is the fact-finder and the plaintiff must prove each claim by a preponderance of the evidence.  A preponderance of the evidence exists upon 'the side on which the greater weight of the evidence is found.'"[1] "Because the Court is the finder of fact, it is up to the Court to weigh the credibility of witnesses and resolve conflicts in witness testimony."[2]

## V.  DISCUSSION

It is unfortunate, of course, that the parties, after having undertaken the effort to execute a comprehensive written lease detailing their respective rights and responsibilities in 2004, were not as conscientious about defining their relationship when that lease expired in 2005.  Nonetheless, it appears that after the expiration of the lease in 2005, the parties continued on as before, with Megarents occupying the same space and paying the same rent—$1,065.00 per month—until July 2010 when Megarents missed the first of three consecutive rental payments.

At trial, Humes was questioned about the three-year period from January 1, 2012 through August 31, 2015, a period which would well exceed the three-year statute of limitations period if that period were to apply.[3]  Based on the records introduced at trial, the Court finds that the total amount of rent due at the rate of

---

[1] *Patel v. Patel*, 2009 WL 427977, at *3 (Del. Super. Feb. 20, 2009) (quoting *Reynolds v. Reynolds*, 237 A.2d 708, 711 (Del. 1967)).

[2] *Masterson-Carr v. Anesthesia Servs., P.A.*, 2015 WL 5168557, at *3 (Del. Super. Aug. 28, 2015).

[3] The Complaint was filed on May 2, 2016.

8

$1,065.00 per month for those 44 months was $46,860.00—$12,780.00 per year from 2012 through 2014 and $8,520.00 from January through August 2015. Obviously, this figure would be the correct amount due only if the 25% late fee did not apply. Payments made by Megarents from January 1, 2012 through December 5, 2015, when Megarents made its last payment, were $49,585.00.[4] The Court finds that Megarents made 14 payments totaling $14,779.00 in 2012, 13 payments totaling $11,585.00 in 2013, 13 payments totaling $13,845.00 in 2014, and 12 payments totaling $9,350.00 in 2015.[5] If the Court only looks to the statute of limitations period going back to May 2013, Megarents paid $33,676.00. Rent due for that 28 month period from May 2013 through August 2015 at the rate of $1,065.00 per month, not including any claimed late fees, was $29,840.00. Thus, it is clear to the Court that 3410 is not entitled to any recovery unless the late fee provision of the original lease applies regardless of the application of the statute of limitations.

---

[4] This amount is based on information drawn from the Quickbooks record of lease payments, 3410's running balance calculation, and Megarents cancelled checks.

[5] To the extent that these amounts disagree with Humes' testimony that the amount paid by Megarents during this period was $47,429.00 ($12,649.00 in 2012, $12,650.00 in 2013, $12,780.00 in 2014 and $9,350.00 in 2015) on total rent due without late fees of $46,860.00, the Court relies on its own calculation. The Court finds the difference of $2,156.00 to be immaterial for analytical purposes because both amounts exceed the rent due without late fees. The Affidavit of Philip Eckstrand in Support of Defendant's Answer Pursuant to 10 *Del. C.* § 3901 claims an overpayment by Megarents of $999.00 in 2012, an underpayment of $130.00 in 2013 (paid in September 2015), no open balance in 2012, 2013, or 2014, and an overpayment of $200.00 in 2015. D.I. 6. Similarly, any difference with the Court's calculations is analytically immaterial.

Between the two witnesses, the Court finds by a preponderance of the evidence Eckstrand to be the more credible. While Eckstrand was clear that he never received any late charge notice, was never threatened with termination or eviction, and was never notified that Megarents was in default because of late payments until after it vacated the premises, Humes was less so. He acknowledged that 3410 did not send monthly rent invoices, late payment notices, or default notices to Megarents, but claimed that he occasionally hand delivered statements to Eckstrand, although he was not sure whether he gave Eckstrand a Quickbooks statement or ones with balances reflecting the 25% late fee. Humes did not produce any such statements. Tellingly, 3410 did not produce any account record created during the tenancy, showing a running balance that included late fees. The Quickbooks account did not include any late fees, even when it showed an open balance. It appears that the only account record showing late fees was the running account prepared by the office of 3410's attorney subsequent to the tenancy.

Eckstrand testified that he had a conversation with Humes in which he told Humes that, due to a decline in Megarents' business, it would pay rent as best it could. If that was not satisfactory, Megarents would vacate. He further testified that Humes agreed to that arrangement because, from 3410's perspective, some rental income was better than no rental income. Eckstrand made the rather obvious point that, had the rent effectively increased by 25% per month as a result of

10

recurring late fees, Megarents simply would have vacated the rental unit rather than allow those charges to accumulate. In response, Humes testified that he did not recall having any such conversation or making any such agreement with Eckstrand. The Court finds by a preponderance of the evidence that Eckstrand's testimony on this point is more credible as well. Once Megarents began to have difficulty with timely rental payments, 3410 consented to accept Megarents' best efforts to pay instead of, in effect, losing a tenant and running the risk of receiving no income. In other words, the Court finds that 3410 felt that some income was better than no income.

Having found those facts by a preponderance of the evidence, the Court next applies them to the law. For context, the Court notes that any rental agreement for a commercial rental unit is excluded from Delaware's Landlord-Tenant Code, and "[a]ny legal rights, remedies and obligations under any agreement for the rental of any commercial rental unit shall be governed by general contract principles."[6] Further, the lease itself does not contemplate renewal after the expiration of its one year term.

"[W]here a tenant under a term for a year or longer holds over after the expiration of his term, and continues to pay rent computed on an annual basis

---

[6] 25 *Del. C.* § 5101(b).

11

which is accepted by the landlord, the creation of a new tenancy is inferred."[7] Just such a new tenancy is inferred here, with the parties agreeing that the new tenancy was month-to-month. The new tenancy is governed by the terms of the expired lease.[8] Those terms would have included the late fee, but for what the Court finds to be an oral modification of the month-to-month lease. That modification occurred when Eckstrand offered to pay whatever Megarents could pay or, in the alternative, vacate the premises. Humes accepted the offer and continued to receive rental payments, albeit somewhat irregularly, but mostly in the amount of $1,065.00. Eventually 3410 received all of the rent due at the rate of $1,065.00 per month. This agreement effectively removed the 25% late fee lease term.

Support for this conclusion is found in the behavior of both parties. Megarents continued to pay rent at the original rate of $1,065.00 per month. Obviously, it would have vacated the rental unit rather than continue to accumulate 25% late fees every month if it understood that term of the original lease was still in effect. On the other hand, 3410 never invoiced for the late fees and none of its contemporaneous records reflect those late fees. Moreover, it made business sense

---

[7] *Independence Mall, Inc. v. Michael J. Wahl and Wahl Family Dentistry P.A.*, 2012 WL 6945505, at *5 (Del. Super. Dec. 31, 2012) (quoting *Schwartzman v. Wilmington Stores Co.*, 123 A.2d 343, 346 (Del. Super. 1924)).

[8] *Independence Mall* at *5 (citing *Wilmington & N.R.R. Co. v. Del. Valley Ry. Co., Inc.*, 1999 WL 463705 at *3 (Del. Super. Mar. 30, 1999)); 52 C.J.S. *Landlord & Tenant* § 253 (2012); *Bateman v. 317 Rehoboth Ave., LLC.*, 878 A.2d 1176, 1185 (Del. Ch. 2005) ("[T]he relevance of cases suggest all terms of a lease continue in force beyond termination of the lease into a holdover tenancy has grown ever more tenuous, given the evolutionary trend of the Delaware Landlord-Tenant Code towards narrower application.").

for 3410 to accept Megarents' best efforts at payment as a long-term tenant rather than run the risk of having a vacant non-income producing rental unit for an indefinite period. Because of the Court's factual findings and legal conclusions, it is unnecessary to address the parties' other contentions.

## VI.  CONCLUSION

For the foregoing reasons, the Court enters judgment for Defendant Megarents, Inc. t/a Events Unlimited and against Plaintiff 3410 Old Capitol Trail, LLC, Successor by Merger to Humes Properties, LLC.


**IT IS SO ORDERED.**

_____
Ferris W. Wharton, Judge

13